# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEHU HAND,<br><br>    Petitioner,<br><br>v.<br><br>WILLIAM BARR, et al.,<br><br>    Respondents. | Case No. 1:20-cv-00348-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT RESPONDENT'S MOTION TO DISMISS AND DISMISS PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE<br><br>(ECF No. 5) |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

On May 21, 2018, Petitioner was convicted after a jury trial in the United States District Court for the District of Massachusetts of two counts of conspiracy to commit securities and wire fraud, two counts of securities fraud, and two counts of wire fraud. (App. 42–43, 61–62).[1] On October 25, 2018, Petitioner was sentenced to serve sixty-six months in federal custody. (App. 41, 44, 61, 63).

---

[1] "App." refers to the Appendix lodged by Respondent on May 15, 2020. (ECF Nos. 5-1, 5-2). App. page numbers refer to the page numbers stamped at the bottom right corner.

1    Petitioner previously filed a petition for writ of habeas corpus in this Court for relief
2 based on the First Step Act ( "FSA" or "Act") regarding the Elderly Offender Home Detention
3 Program ("EOHD Program") and earned time credits. Hand v. Merlak, No. 1:19-cv-01144-AWI-
4 SAB.[2] On June 15, 2020, that petition was dismissed because Petitioner's EOHD Program claim
5 was not ripe for adjudication and the earned time credit claims were not exhausted. Id., ECF Nos.
6 15, 19.

7    Meanwhile, on March 5, 2020, Petitioner filed the instant petition for writ of habeas
8 corpus, wherein Petitioner: (1) challenges the validity of policies[3] promulgated by the Attorney
9 General and the Federal Bureau of Prisons ("BOP") under the First Step Act; (2) requests a writ
10 of mandamus to compel BOP to award the earned time credits Petitioner has earned to date and
11 in the future pursuant to the FSA, at the rate of fifteen days of time credit for every thirty days of
12 participation in the evidence-based recidivism reduction programs and productive activities; and
13 (3) requests a writ of mandamus to compel BOP to issue the guidelines required to be issued
14 pursuant to 18 U.S.C. § 3624(g). (ECF No. 1 at 1–2).[4]

15    On May 15, 2020, Respondent filed a motion to dismiss, arguing the petition should be
16 dismissed due to: lack of case and controversy as BOP has taken no FSA action impacting
17 Petitioner's custody; lack of statutory authority to compel BOP discretionary action; and failure
18 to exhaust. (ECF No. 5). Petitioner filed an opposition to the motion to dismiss and multiple
19 supplements to the opposition. (ECF Nos. 11–13, 15).

**II.**

**DISCUSSION**

**A. The First Step Act**

The First Step Act was enacted on December 21, 2018 and implemented a number of prison and sentencing reforms, including computation of good time credits, reducing and

---

[2] The Court may take judicial notice of its own records in other cases. United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).
[3] Petitioner challenges BOP's policy barring prisoners from being credited for programming and activities completed before January 15, 2020. Petitioner also challenges the withdrawal of approval for all activities completed by Petitioner, leaving a small quantity of approved activities and programming that will make it impossible for prisoners to earn any appreciable amount of time credits. (ECF No. 1 at 3).
[4] Page numbers refer to the ECF page numbers stamped at the top of the page.

2

restricting mandatory minimum sentences, safety valve eligibility, retroactive application of the Fair Sentencing Act, and the availability of early release. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

With respect to earned time credit, the Ninth Circuit has described the First Step Act's amendments as follows:

> [P]aragraph 102(b)(1) amends [18 U.S.C.] § 3624 by adding subsection (g), which is relevant to the Act's creation of an earned time credit system.[5] [132 Stat.] at 5210-13. The Act requires that, within 210 days of its enactment, the Attorney General establish a "risk and needs assessment system" to, broadly speaking, review each prisoner's recidivism risk level, award earned time credit as an incentive for participation in recidivism reduction programming, and "determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624." § 101(a), 132 Stat. at 5196–97. Section 3624(g) details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to prerelease custody or supervised release. § 102(b), 132 Stat. at 5210–13.

Bottinelli v. Salazar, 929 F.3d 1196, 1197–98 (9th Cir. 2019) (footnote in original).

In accordance with 18 U.S.C. § 3632, the United States Department of Justice ("DOJ") published the risk and needs assessment system on July 19, 2019. Press Release, U.S. Dep't of Just., Department of Justice Announces the Release of 3, 100 Inmates Under First Step Act, Publishes Risk And Needs Assessment System (July 19, 2019), https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and.

With respect to implementation of the risk and needs assessment system, 18 U.S.C. § 3621(h) provides:

> (1) In general.--Not later than 180 days after the Attorney General completes and releases the risk and needs assessment system (referred to in this subsection as the "System") developed under subchapter D, the Director of the Bureau of Prisons shall, in accordance with that subchapter--
>
>> (A) implement and complete the initial intake risk and needs assessment for each prisoner (including for each prisoner who was a prisoner prior to the effective date of this subsection), regardless of the prisoner's length of imposed term of imprisonment, and begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination;

---

[5] In contrast to good time credit, earned time credit is awarded for "successfully complet[ing] evidence-based recidivism reduction programming or productive activities." § 101(a), 132 Stat. at 5198.

       (B) begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers and add any new evidence-based recidivism reduction programs and productive activities necessary to effectively implement the System; and

       (C) begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, while prisoners are participating in and completing the effective evidence-based recidivism reduction programs and productive activities.

(2) Phase-in.--In order to carry out paragraph (1), so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the System, the Bureau of Prisons shall--

       (A) provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A); and

       (B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism reduction programs and productive activities.

18 U.S.C. § 3621(h)(1)–(2).

       Pursuant to 18 U.S.C. § 3621(h)(1), all inmates in the BOP system received an initial assessment using the risk and needs assessment system known as the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN") by January 15, 2020. Press Release, U.S. Dep't of Just., Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation (Jan. 15, 2020), https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act.

       Prisoners "who successfully complete[] evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A). A prisoner determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii).

4

The FSA provides that a "prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed prior to the date of enactment of this subchapter." 18 U.S.C. § 3632(d)(4)(B). On its website BOP states that "FSA Time Credits (FTC) may only be earned for completion of assigned evidence-based recidivism reduction programs or productive activities authorized by BOP and successfully completed on or after January 15, 2020." First Step Act – Frequently Asked Questions, Federal Bureau of Prisons, https://www.bop.gov/inmates/fsa/faq.jsp#fsa_time_credits (last visited Jan. 19, 2021).

"Section 3624(g) details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to prerelease custody or supervised release," Bottinelli, 929 F.3d at 1198, and provides that the "Attorney General, in consultation with the Assistant Director for the Office of Probation and Pretrial Services, shall issue guidelines for use by the Bureau of Prisons in determining the appropriate type of prerelease custody or supervised release and level of supervision for a prisoner placed on prerelease custody pursuant to this subsection," 18 U.S.C. § 3624(g)(6)(A).

**B. Standing and Ripeness**

Respondent contends that the petition should be dismissed because, *inter alia*, Petitioner lacks Article III standing, the petition is not ripe, and there is a lack of case and controversy because BOP has taken no action under the First Step Act impacting Petitioner's custody. (ECF No. 5 at 2). Respondent asserts that Petitioner lacks standing because "neither Petitioner's custodial status nor custody term has been impacted by any BOP action or theoretical inaction" given that "BOP has not rendered any decision regarding FSA (elderly offender) sentence end-phase programming options." (ECF No. 5 at 4). Respondent argues that the petition is not ripe because "[n]othing has changed" from this Court's dismissal of Petitioner's initial petition. (ECF No. 5 at 5).

However, it appears that Respondent is conflating the claims and issues raised in the instant petition with those raised in Petitioner's initial petition because the Elderly Offender Home Detention Program is not an issue raised in the instant petition. Rather, here Petitioner

5

seeks to compel the BOP to award the FSA time credits ("FTC") Petitioner has earned to date and in the future at the rate of fifteen days of time credit for every thirty days of participation in the evidence-based recidivism reduction programs and productive activities in addition to challenging the small quantity of approved activities and programming that, in turn, will make it impossible for prisoners to earn any appreciable amount of time credits. (ECF No. 1 at 3).

Respondent's arguments regarding standing, ripeness, and lack of case and controversy are somewhat confusing as the instant motion to dismiss borrows heavily from the motion to dismiss filed in Petitioner's previous habeas case, which involved different FSA claims. Nevertheless, "federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." United States v. Hays, 515 U.S. 737, 742 (1995) (alteration in original) (internal quotation marks omitted) (quoting FW/PBS, Inc. v. Dallas, 493 U.S. 215, 230–231 (1990)). Accordingly, the Court will proceed to determine whether it has jurisdiction over the claims raised in the instant petition.

Article III of the United States Constitution limits the jurisdiction of federal courts to "actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). Two components of the Article III case-or-controversy requirement are the "closely related" concepts of standing and ripeness. Bova v. City of Medford, 564 F.3d 1093, 1095–96 (9th Cir. 2009) (citing Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121, 1123 (9th Cir. 2009)). The Ninth Circuit has described standing, ripeness, and their overlap as follows:

> To have standing, a plaintiff must have suffered an injury in fact that is "concrete and particularized;" that can be fairly traced to the defendant's action; and that can be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "While standing is primarily concerned with *who* is a proper party to litigate a particular matter, ripeness addresses *when* litigation may occur." *Lee v. Oregon,* 107 F.3d 1382, 1387 (9th Cir. 1997). "[I]n many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). The ripeness inquiry in some cases may therefore "be characterized as standing on a timeline." *Id.*
>
> For example, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580–

> 81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (internal quotation marks omitted)). That is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. In this way, ripeness and standing are intertwined.

Bova, 564 F.3d at 1096. "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 807–08 (2003) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1967)).

### 1. Claims Regarding FTC and Evidence-Based Recidivism Reduction Programs

The FSA provides that by January 15, 2020,[6] BOP "implement and complete the initial intake risk and needs assessment for each prisoner," "*begin* to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination," and "*begin* to expand the effective evidence-based recidivism reduction programs and productive activities it offers." 18 U.S.C. §§ 3621(h)(1)(A)–(B) (emphasis added). "In order to carry out [18 U.S.C. § 3621(h)(1)], so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need," BOP shall "provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is *2 years* after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A)." 18 U.S.C. § 3621(h)(2)(A) (emphasis added). That is, the FSA provides two years—until January 15, 2022—for BOP to "phase-in" the evidence-based recidivism reduction programs and productive activities for all prisoners. 18 U.S.C. § 3621(h)(2)(A).

Although the FSA required BOP to "*begin* to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination" and "*begin* to expand the effective evidence-based recidivism reduction programs and productive activities it offers" by

---

[6] January 15, 2020 is 180 days after the Attorney General completed and published the risk and needs assessment system on July 19, 2019. See 18 U.S.C. § 3621(h)(1).

January 15, 2020, the Act provides two years for BOP to "provide such evidence-based recidivism reduction programs and productive activities for *all* prisoners." 18 U.S.C. §§ 3621(h)(1)(A)–(B), (h)(2)(A) (emphasis added). Therefore, because the Act does not require BOP to provide evidence-based recidivism reduction programs and productive activities for all prisoners until January 2022, the Court finds that Petitioner's claims regarding earned time credits and evidence-based recidivism reduction programs are not ripe.

In support of his petition, Petitioner has directed the Court's attention to Goodman v. Ortiz, No. CV 20-7582 (RMB), 2020 WL 5015613 (D.N.J. Aug. 25, 2020). (ECF Nos. 13, 15). In Goodman, the petitioner's initial needs assessment found him to be a low risk of recidivism and the petitioner was assessed as a low risk of recidivism for a second time. The petitioner was assigned programming activities that met the requirements of the FSA, successfully participated in said programming, and accumulated 240 days of credit that would result in the petitioner's release if applied. BOP did not dispute that the petitioner had earned the credit. The issue in Goodman was whether the earned credit should be applied immediately or whether BOP was not required to award any earned credit until the two-year phase-in period under the statute expired on January 15, 2022. Id. at *2. The district court found that "while the statute does not explicitly provide a date when the BOP *must* apply a prisoner's earned credits from participation in recidivism reduction programs," there is "no evidence in the statutory framework for delaying application of incentives earned by all prisoners during the phase-in program until January 15, 2022, the final date when BOP must complete the phase-in with respect to 'all prisoners.'" Id. at *6. The district court concluded that "BOP's position that a prisoner can complete the PATTERN program before January 15, 2022 with no benefit to the prisoner is contrary to the statutory language" and directed "BOP to immediately apply Petitioner's Earned Time credit." Id.

The Court finds that Goodman is distinguishable from the instant matter. There is nothing before this Court demonstrating that Petitioner has had two consecutive assessments with no increase in risk of recidivism, that Petitioner has been assigned to appropriate evidence-based recidivism reduction programs, or that the programs and activities in which Petitioner alleges he

has participated will entitle him to credits. Therefore, Petitioner has not suffered an injury in fact that is concrete and particularized, and any alleged future injury rests upon contingent future events that may not occur as anticipated (*e.g.*, Petitioner may not have two consecutive assessments with no increase in risk of recidivism, which would disqualify Petitioner from receiving fifteen days of time credit for every thirty days of participation in the evidence-based recidivism reduction programs and productive activities).

As Petitioner's earned time credits and evidence-based recidivism reduction programs claims are not ripe for adjudication, Respondent's motion to dismiss should be granted with respect to these claims.

2. <u>Claim Regarding Issuance of Guidelines Pursuant to 18 U.S.C. § 3624(g)</u>

Section 3624(g)(6)(A) provides that the "Attorney General, in consultation with the Assistant Director for the Office of Probation and Pretrial Services, shall issue guidelines for use by the Bureau of Prisons in determining the appropriate type of prerelease custody or supervised release and level of supervision for a prisoner placed on prerelease custody pursuant to this subsection." 18 U.S.C. § 3624(g)(6)(A).

The statute does not provide a date by which the Attorney General must issue these guidelines. Moreover, Petitioner cannot demonstrate that he has suffered an injury in fact that is concrete and particularized due to the lack of said guidelines. Accordingly, the undersigned finds that Petitioner has not established that he has standing to bring this claim. Accordingly, dismissal is warranted on this ground. [7]

**III.**

**RECOMMENDATION & ORDER**

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. The motion to dismiss (ECF No. 5) be GRANTED; and

2. The petition for writ of habeas corpus be DISMISSED without prejudice.

///

---

[7] In light of the determination that Petitioner lacks standing and his claims are not ripe for adjudication, the undersigned will not address the other grounds for dismissal in Respondent's motion to dismiss.

1    Further, the Clerk of the Court is DIRECTED to randomly assign this action to a District
2 Judge.

3    This Findings and Recommendation is submitted to the assigned United States District
4 Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local
5 Rules of Practice for the United States District Court, Eastern District of California. Within
6 **THIRTY (30) days** after service of the Findings and Recommendation, any party may file
7 written objections with the court and serve a copy on all parties. Such a document should be
8 captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the
9 objections shall be served and filed within fourteen (14) days after service of the objections. The
10 assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C.
11 § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time
12 may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834,
13 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 4, 2021**

UNITED STATES MAGISTRATE JUDGE